UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **STACY BROWN** | Case No. 1:09-cv-901 |
| **Plaintiff** | Weber, J. |
| | Wehrman, M.J. |
| vs. | |
| **MICHAEL J. ASTRUE,**<br>**COMMISSIONER OF**<br>**SOCIAL SECURITY** | |
| **Defendant.** | |

**REPORT AND RECOMMENDATION[1] THAT (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND NOT TO BE SUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE ALJ UNDER THE FOURTH SENTENCE OF 42 U.S.C. §405(g); AND (2) THIS CASE BE CLOSED**

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the administrative law judge ("ALJ") erred in finding that plaintiff was not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. at 9-22) (ALJ's decision)). Although the case presented is relatively close, I conclude that remand is required.

**I.**

Plaintiff filed an application for DIB and another application for SSI, both on July 12, 2005, alleging a disability onset date of August 31, 2004, due to pain in her lower back, loss of control in her right leg, asthma, bronchitis, depression, and bipolar disorder. (Tr. 66). Her application was denied initially and upon reconsideration. Plaintiff then requested a hearing *de novo* before an ALJ. Evidentiary hearings were held on September 19, 2008 and January 20,

---

[1] **Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation**

2009. Plaintiff was represented by counsel and testified at both hearings. Brian Womer testified as a vocational expert.

On February 3, 2009, the ALJ issued an unfavorable decision, and on October 13, 2009, the Appeals Council denied plaintiff's request for review. Therefore, the ALJ's decision stands as defendant's final determination. (Tr. 1-3).

The ALJ's "Findings," which represent the rationale of the decision, are as follows:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2. The claimant has not engaged in substantial gainful activity since August 31, 2004, the alleged onset date (20 CFR 404.1571, *et seq*, and 416.971, *et seq*).

3. The claimant has the following severe impairments: obesity; residuals of herniated lumbar disc surgery; mild carpal tunnel syndrome; asthma; major depression; panic disorder; and polysubstance abuse, reportedly in remission (20 CFR 404.1521, *et seq*).
................................

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
................................

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that she should not perform more than simple repetitive to middle-level complex tasks; should not kneel, crawl, crouch, stoop, climb ramps or stairs at the work site; should not climb ladders, ropes, or scaffolds; should not be exposed to hazards, such as or similar to unprotected heights and dangerous moving machinery; should not be exposed to extremes of heat, cold, wetness, humidity, generally obnoxious odors, fumes, gases, or poor ventilation; should not perform more than frequent fine manipulation and/or gross handling with her right upper extremity; should have no contact with the general public as a work requirement or more than superficial contact with co-workers and supervisors; should not be exposed to more than occasional work setting and routine changes; and should not be required to perform work involving fast pace, production quotas, or strict time standards.
.....................................

    6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    ....................................

    7.    The claimant was born on June 13, 1976 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

    8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

    ........................................

    11.    The claimant has not been under a disability, as defined in the Social Security Act, from August 31, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 11-21). In summary, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB or SSI.

On appeal, plaintiff maintains that: (1) the ALJ erred in failing to give controlling weight to the opinions of plaintiff's physician, in failing to address the weight accorded to the opinions of other physicians, and in failing to consider the opinion of plaintiff's mental health therapist; (2) the ALJ failed to consider the impact of plaintiff's obesity on her ability to work; and (3) the ALJ relied on an improper hypothetical to the vocational expert. Each argument will be addressed in turn.

## II.

The court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusions." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.2d 1027, 1035 (6th Cir. 1994).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the SSA asks if the claimant is still performing substantial gainful activity; at Step 2, the SSA determines if one or more of the claimant's impairments are "severe;" at Step 3, the SSA analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listings of Impairments; at Step 4, the SSA determines whether or not the claimant can still perform his or her past relevant work; and finally, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of

4

impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

Plaintiff contends that the ALJ erred: 1)  by failing to give controlling weight to the opinion of her treating physician, Dr. Pledger; 2) by failing to adequately state the weight given to Dr. Pledger's opinion and other medical opinions; and 3) by failing to adequately consider plaintiff's mental health issues.  Defendant responds that plaintiff's arguments elevate form over substance in the way in which plaintiff has construed the ALJ's findings.   Although there is some truth in defendant's response, close examination of the ALJ's opinion makes clear that this court must remand based on errors that are more significant.

### A.  Weight Given to Medical Testimony

In *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004), the Sixth Circuit held, consistent with 20 C.F.R. § 404.1527(d)(2), that the ALJ must give a treating source opinion controlling weight if the treating source opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record."  However, it is error to give controlling weight to a treating physician's opinion if it is inconsistent with other substantial evidence in the case record.  *See Blakley v. Commissioner of Social Security*, 581 F.3d 399, 410 (6th Cir. 2009); Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *2 (July 2, 1996).

If the ALJ determines that the opinion of the treating physician should not be afforded controlling weight, the agency's own procedural regulations demand that the ALJ give "good reasons" on record for according less than controlling weight to the treating source.  *Blakley*, 581 F.3d at 410; *see also* 20 C.F.R. § 404.1527(d)(2).  Furthermore, the ALJ must "always give good reasons in [the] notice of determination or decision for the weight given to the claimant's

5

treating source's opinion." 20 C.F.R. § 404.1527(d)(2). If the ALJ fails to give good reasons for discounting the opinion of the treating physician, this court will not find substantial evidence to support the ALJ's finding.

Dr. Pledger is an orthopedist who treated plaintiff between August 3, 2005, when he performed back surgery on plaintiff, and November 30, 2005. At plaintiff's request, he completed a questionnaire on 1/19/06 in which he opined that plaintiff could not sit for more than 2 hours in an 8 hour day, and could not stand or walk for more than 2 hours, which limitations would result in a finding of disability. (Tr 334).

The ALJ clearly discounted Dr. Pledger's opinion. The ALJ acknowledged that Dr. Pledger was a treating physician, and summarized a number of Dr. Pledger's medical records. TR 16. However, the ALJ states: "As set forth below, Dr. Pledger's opinion is not entitled to significant weight." Plaintiff argues that the ALJ failed to give "good reasons" for affording Dr. Pledger's opinion less than controlling weight, because there is no discussion of Dr. Pledger's opinion *"set forth below"* or following the ALJ's statement on page 8 of his opinion.

While plaintiff is correct that the ALJ does not explain his rejection of the treating physician's opinion "[a]s set forth *below*," the ALJ does offer sufficient justification elsewhere in the opinion for his rejection of Dr. Pledger's opinion.

> [Surgical] [f]ollow up records from Dr. Pledger indicate that the claimant
> complained of some pain post-operatively, but evaluation on November 30, 2005,
> the last date the claimant saw Dr. Pledger, indicated no muscle spasm, normal
> posture, and no tenderness over the paraspinal muscles, sciatic notch, buttock, or
> iliac crest. Muscle strength was generally 5+ with the exception of some
> weakness in the right peroneal, quadricep, and hamstring. Sensation was
> decreased in the right leg at the lateral thigh and lateral foot. CT scan revealed no
> abnormalities, with the exception of the previous surgery (Exhibit 22-F), and
> EMG performed on November 22, 2005 revealed only a mild right S1
> radiculopathy. Dr. Pledger completed a residual functional capacity assessment
> on January 19, 2006, and indicated that the claimant could not sustain full-time
> work based on the last visit in November. However, Dr. Pledger has not seen the

6

> claimant since November of 2005.  Subsequent physical examinations and objective testing has not shown recurrent disc herniation or spinal or neuroforaminal stenosis... In fact, treatment records from ...the claimant's pain specialist, confirm that the claimant experiences mild symptoms consistent with the earlier mild EMG findings noted by Dr. Pledger.... These records demonstrate normal gait, heel and toe walk, and motor strength with only some reduced sensation and depressed reflexes in the right leg.

TR at 16.  In the same paragraph, the ALJ discusses the findings of Dr. Koppenhoefer, who examined the claimant on October 16, 2008 at the request of her counsel and also found her to be disabled.  Prior to discounting Dr. Pledger's opinion as "not entitled to significant weight," the ALJ expressly noted the "minimal" diagnostic findings made by Dr. Koppenhoefer concerning any abnormalities, with the exception of "spinal tenderness and reduced range of motion" which the ALJ opined were "highly subjective and effort-dependent."  *Id*.  The ALJ did not appear to rely on any medical testimony for this opinion, nor did he rely on contrary medical records showing a lack of tenderness or full range of motion.

The question for this court is whether the ALJ's analysis, including his discussion of the last examination by Dr. Pledger in November 2005 and his detailed review of both Dr. Pledger's own post-surgical medical records and more recent objective medical evidence that did not support a finding of disability, were sufficient to provide plaintiff with notice for the reasons that Dr. Pledger's opinion was not given controlling or "significant" weight.  I conclude that, while the analysis of the ALJ was not ideally articulated, it appears to state sufficient "good reasons" for his rejection of Dr. Pledger's assessment of plaintiff's alleged limitations.  The opinion very strongly implies, even though it does not expressly articulate, that the assessment was outdated and was inconsistent with both Dr. Pledger's own objective records and more recent medical data.

7

However, remand is required in this case based upon related errors concerning the weight given to the opinion of Dr. Pledger and other medical evidence.  The ALJ's opinion is simply too vague to determine what consideration - if any- he gave to Dr. Pledger's opinion.  Other than stating that the opinion was not entitled to "significant" weight, the ALJ never explained if he was rejecting the opinion in its entirety or only partially.

Additional flaws in the ALJ's analysis tip the balance in favor of remand in this case. For example, the ALJ opined that the opinion of a non-examining state medical consultant was entitled to "significant weight" because it was "well-supported by the weight of the evidence." However, the report does not reflect the medical consultant's specialty or qualifications and does not otherwise explain why this consultant's opinion was better supported than other contrary opinions.  The ALJ's reliance on the opinion does not conform with the regulations, a particularly glaring deficiency in light of the date of the consultant's review.

The ALJ also gave "significant weight" to the opinion of a non-examining orthopedic medical expert who testified at the hearing by telephone, Dr. Brahms.  Although he was not asked to render an opinion on this specific issue, Dr. Brahms questioned Dr. Pledger's decision to perform back surgery on the plaintiff in August of 2005 in light of plaintiff's obesity.  Dr. Brahms opined that plaintiff was capable of light work, but his testimony contained several errors and incomplete information.  Dr. Brahms also expressly repudiated any knowledge or consideration of plaintiff's mental health impairments; he restricted his opinion to the somewhat incomplete orthopedic records he was asked to review.  (Tr. 59-61).  For example, he referred to an RFC assessment completed by the state examiner on November 7, 2005 as "prior to her surgery," when in fact the assessment was post-surgery.  Dr. Brahms was not provided with a September 8, 2008 MRI prior to the hearing, but opined based upon findings read to him at the

8

hearing that those findings were "rather benign." When plaintiff's counsel attempted to cross-examine Dr. Brahms, he admitted he did not have access to the records in front of him, but instead was relying upon his notes of those records. As a result, plaintiff's counsel was unduly limited in his ability to cross-examine Dr. Brahms.

Dr. Brahms testified that plaintiff's morbid obesity was an "extreme concern" and that her obesity was a "major factor" in her back pain, since her pain would be "tremendously aggravated" by her size. (Tr 82-87). He explained that in terms of "post-laminectomy pain," her pain would be increased due to the "[t]remendous amount of pressure on the entire vertebral column" caused by plaintiff's weight. (Tr. 87). Given Dr. Brahms' focus on orthopedic limitations without full regard to plaintiff's pain level or her mental or other impairments, it was not entirely clear that his testimony supports the ALJ's finding that plaintiff could complete an eight hour workday. For example, when discussing plaintiff's physical limitations, Dr. Brahms testified: "If there is any disqualifying factor here, it's her size." (*Id*). He also testified that he "did not disagree" with plaintiff's treating pain physician, Dr. Munier, that plaintiff suffers from "facet related pain," and opined that plaintiff would be expected to experience pain due to both arthritis and her obesity. (*Id*). The ALJ did refer to Dr. Brahms' opinion that plaintiff's back impairment was "aggravated by her obesity," but the ALJ did not appear to fully consider the effect of plaintiff's obesity on plaintiff's pain level or her other diagnoses and impairments. (Tr. 17). Therefore, remand is required.

The ALJ also failed to adequately explain what weight, if any, he gave to Dr. Koppenhoefer's opinion. Dr. Koppenhoefer reviewed plaintiff's records and examined plaintiff on October 15, 2008, concluding that she suffered significant limitations equal to the Listings of 1.04. The ALJ rejected his opinion as "extreme" and as "not supported by the clinical findings

9

in his report." (Tr 19). However, in addition to the clinical findings actually made by Dr. Koppenhoefer, additional clinical findings by Dr. Munier, plaintiff's treating pain specialist, appear to support at least some of Dr. Koppenhoefer's opinions. Those findings do not appear to have been noted or addressed by the ALJ.

### B. Mental Health Testimony

Plaintiff also argues that the ALJ failed to consider the opinion of plaintiff's treating mental health therapists. I agree. Shortly prior to the claimed period of disability, in 2004, plaintiff attempted suicide and was diagnosed with Major Depressive Disorder-Recurrent, and PTSD. (Tr. 394). On June 14, 2007, plaintiff was diagnosed by Judith Freeland, M.D. with Major Depression and Panic Disorder with Agoraphobia. (Tr. 640). Progress notes from Ms. Allison Stauch, CT, as well as from Dr. Freeland throughout 2007 and 2008 reflect that plaintiff continued in treatment and continued to experience significant emotional distress and/or various mental illnesses. On May 8, 2008, Ms. Stauch completed a mental impairment questionnaire that indicated that plaintiff was unable to meet competitive standards needed to do unskilled work. (Tr. 650-655). Ms. Stauch also stated that plaintiff experiences panic attacks while running errands, and would miss more than four days of work per month as a result of her impairments or treatment. (Tr. 654-655). A progress note dated November 20, 2008 reflects that plaintiff's husband was arrested and jailed for domestic violence, and that her sister admitted to sleeping with her husband, leading to plaintiff's suicidal ideation. (Tr. 749). At the hearing, plaintiff testified to a history of domestic abuse, although her now-ex husband continues to live in the same home.

The ALJ discusses a therapist's opinion that plaintiff was "extremely" restricted in her activities of daily living. The ALJ appeared to dismiss that opinion in part because it is

10

"unsigned" (Tr 13), but that statement is incorrect. The record reflects that Ms. Stauch both signed and printed her name on the assessment. (Tr. 650). In his written opinion, the ALJ also opined that plaintiff's treatment records "continually confirm that the major source of the claimant's reported stress is her dysfunctional family situation and counseling sessions are primarily geared toward supportive counseling with coping-type assistance to help her deal with her domestic situation as opposed to predominantly psychological illness." (Tr. 17). One difficulty with the ALJ's evaluation is that it appears to assume - without adequate discussion of the records - that "psychological illness" is incompatible with the plaintiff's "domestic situation." The ALJ further stated: "It is noted that a source from Comprehensive Counseling Services reported that the claimant's daily activities were extremely restricted. However, this appears to be based on the claimant's reported physical impairments." (*Id*). Again, the ALJ's statement does not appear to be entirely supported by the record. The treatment records reflect multiple mental health limitations (depression, bi-polar disorder, anxiety and panic attacks) that may impact plaintiff's daily activities independent of her physical impairments. Plaintiff testified that she has attended weekly treatment for a period of 4-5 years, although she misses some appointments "because I don't feel like going outside," presumably related to her diagnosis of agoraphobia. (Tr. 34). Plaintiff's GAF score is variously assessed in the records as 50-55. (Tr. 394, 640). Although the Commissioner has determined that GAF scores have "no 'direct correlation to the severity requirements of the mental disorders listings,'" the GAF scores are indicative of difficulty in social and occupational functioning and support mental health limitations independent of physical limitations. *See Kennedy v. Astrue*, 247 Fed. Appx. 761, 766 (6th Cir. 2007)(additional citation omitted)).

SSR 06-03p provides that opinions from non-medical sources, such as Ms. Stauch, should be evaluated based upon a number of factors. Unfortunately, it is not clear from the record presented whether the ALJ used these factors to evaluate the various opinions concerning plaintiff's claimed mental impairment and limitations. The only incorporation of any mental health limitations used by the ALJ to the vocational expert was that the plaintiff "have no more than superficial contact with co-workers and supervisors in her job." (Tr. 46). In his opinion, the ALJ relied upon the assessment of a non-examining reviewing psychologist that plaintiff retained the RFC to perform work activities "within the reduced range of simple to middle-complex tasks." (Tr. 18).

### C. Impact of Obesity

The last troublesome area of the ALJ's decision concerns the impact of plaintiff's obesity on her ability to work. The ALJ considered plaintiff's obesity primarily in his reliance on Dr. Brahms' opinion. However, because his nearly exclusive reliance on Dr. Brahms' opinion was itself error, and because Dr. Brahms was not entirely clear in his testimony concerning the impact of plaintiff's obesity on her pain level and other RFC factors, further consideration of plaintiff's obesity on remand is appropriate. *See Kennedy v. Astrue*, 247 Fed. Appx. at 767 (remanding for consideration of the effects of plaintiff's morbid obesity on plaintiff's physical functioning, where insufficient evidence that impact of obesity was considered). *But see Bledsoe v. Barnhart*, 165 Fed. App'x 408, 412 (6th Cir. 2006) (holding that the ALJ sufficiently considered the claimant's obesity by explicitly mentioning obesity in the findings of fact); *accord Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th. Cir. 2004)(finding sufficient indirect consideration of weight where ALJ adopted limitations suggested by physicians who were well aware of claimant's weight).

### D. Vocational Expert Testimony

Plaintiff last complains that the ALJ erred by relying on an improper hypothetical to the vocational expert, because the hypothetical did not fully consider plaintiff's need for continued pain management, additional limitations suggested by treating physicians, and her mental health impairments. As explained above, remand is appropriate. Whether or not additional impairments should be considered may be more appropriately determined after remand.

### E. Remand Required, but Not Reversal

While remand is required on the record presented, reversal is not, in part because of evidence in the record that may support a denial of benefits. For example, in response to a question on a form inquiring whether plaintiff is "a malingerer," Dr. Pledger declined to mark either "yes" or "no," choosing instead to hand-write in his own response "not sure." (Tr 332). It is clear from the ALJ's opinion that a large part of his decision to deny benefits was based upon his assessment of plaintiff's credibility concerning her alleged limitations and pain level. The ALJ specifically noted a treatment note from plaintiff's mental health records where plaintiff told her therapist that she hoped to obtain disability benefits so that her abusive ex-husband could move out, implying an improper motivation for seeking treatment and/or benefits.[2] "This is not a basis for obtaining disability benefits." (Tr. 19). While the ALJ's comment is certainly true, the same records reflect long-standing mental health treatment involving significant mental health issues such as bi-polar disorder, anxiety/panic attacks, and major depression that the ALJ either did not fully consider - or at least - adequately articulate the extent of his consideration of those issues.

---

[2]Plaintiff testified at the hearing that both her ex-husband and her son (then in jail), both of whom live with her, receive disability benefits. She also testified that those benefits are the sole source of family income.

### III. Conclusion and Recommendation

A sentence four remand provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

It is therefore **RECOMMENDED** that the decision of the Commissioner to deny plaintiff DIB and SSI benefits be **REVERSED**, and this matter be **REMANDED** under sentence four of 42 U.S.C. § 405(g). **IT IS FURTHER RECOMMENDED** that, on remand, the ALJ be instructed to: (1) properly weigh and discuss the medical evidence and mental health records as required; and (2) consider all relevant limitations concerning the impact of plaintiff's obesity and any additional limitations caused by her ongoing mental health diagnoses and treatment

Date: September 17, 2010                                   s/ J. Gregory Wehrman
                                                           J. Gregory Wehrman
                                                           United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

STACY BROWN                                                   Case No. 1:09-cv-901

      Plaintiff                                                    Weber, J.
                                                                                  Wehrman, M.J.

vs.

MICHAEL J. ASTRUE
COMMISSIONER OF
SOCIAL SECURITY

      Defendant.

**NOTICE**

      Attached hereto is the Report and Recommendation Decision of the Honorable J. Gregory Wehrman, United States Magistrate Judge.  Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations **within 14 days** after being served with this Report and Recommendation.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to another party's objections **within 14 days** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).